OPINION
{¶ 1} Appellant/Cross-Appellee, Terri Ruiz-Bueno ("Terri"), appeals and Appellee/Cross-Appellant J. Charles Ruiz-Bueno ("Charles") cross-appeals the judgment entry of divorce of the Lake County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} The parties were married in Willoughby Hills, Ohio on June 7, 1980. Five children were born as issue of the marriage, and as of the trial date, two children remained unemancipated, being ages 13 and 16. At that time Charles was 50 years old *Page 2 
and Terri was 46. Charles filed his complaint for divorce on August 22, 2006. On September 12, 2006, Terri filed her answer and a motion for temporary child support and spousal support.
 {¶ 3} The matter was referred to a referee. On December 5, 2006, pursuant to agreement of the parties, the magistrate ordered Charles to pay $588 per month per child as and for temporary child support and $3,500 per month as and for temporary spousal support.
 {¶ 4} The trial began on February 13, 2007. Charles rested his case on that date. Due to inclement weather on February 14, 2007, the matter was continued to resume on February 23, 2007. Charles is an attorney licensed to practice law in Ohio. Between February 13, 2007 and February 23, 2007, Charles was terminated from his employment. Although the magistrate offered to continue the February 23, 2007 hearing date, the parties indicated they wished to conclude the trial at that time. The magistrate permitted Charles to reopen his case to submit additional evidence concerning the termination of his employment.
 {¶ 5} On April 12, 2007, the magistrate filed her findings of fact and conclusions of law. When the parties married, Terri was 19 years old and Charles was 22. He earned a B.A. prior to the marriage. Early on in the marriage, Charles earned a Masters of Divinity degree. While he was employed as a pastor at a church in Canton, Ohio, the parties' first child was born in 1983. Charles was next employed as a pastor at a church in Florida where the parties' second and third children were born. In addition to taking care of the parties' children, Terri was self-employed running a home day care center. *Page 3 
 {¶ 6} Next, the parties moved back to Ohio with their three children and Charles attended law school in Cleveland. They moved into his parents' home in Willoughby Hills, and Terri worked part-time for her father-in-law, who is a medical care provider, doing his medical insurance billing. Terri's relationship with her in-laws was strained. After Charles' first year in law school, Terri's mother-in-law fired her and told her to get out of the house. Charles did not want to leave his parents' residence.
 {¶ 7} The parties eventually moved into a house in Willoughby Hills where they resided for three years. While Charles attended law school, Terri was responsible for all household chores and continued doing her father-in-law's billing. The parties then moved to an apartment in Mentor where they resided for four years. During that time, they had their fourth and fifth children. Terri home schooled the children while they were in grade school.
 {¶ 8} Charles earned a J.D. degree and a Masters of Law degree, and was licensed to practice law in Ohio in 1990. After becoming an attorney, Charles was employed by Weltman Weinberg as an associate attorney. In this position he earned $103,000 per year and participated in the firm's 401(k) plan. The parties stipulated that in 2004, Charles earned $111,884 in wages and $7,672 in business profit for a total of $119,556, and in 2005, he earned $132,622 in wages and $6,923 in business profit for a total of $139,545.
 {¶ 9} The parties then purchased the marital residence in Painesville Township. While Charles worked at the law firm, Terri did babysitting work. The parties' home included a two-bedroom apartment. Although Terri testified she could rent the *Page 4 
apartment for $600 per month, she rents it to the parties' adult daughter and her husband for $300 per month.
 {¶ 10} Terri is a high school graduate and is presently attending Lakeland Community College seeking certification in medical lab technology. She hopes to complete this course in another three years.
 {¶ 11} Terri earns $15 per hour doing cleaning and wallpapering work. She has recently been averaging 40 hours per week.
 {¶ 12} In August, 2005, Charles entered an employment contract with Frederick and Associates, LLC, as an attorney, pursuant to which he was to receive $150,000 per year. In early 2007, Charles discovered his employer had only paid him $136,000 in the previous year, which the employer alleged was due to his failure to meet his billable hour goal. The parties stipulated that Charles earned $136,302 in wages in 2006.
 {¶ 13} The parties separated in September, 2005, when Charles left the marital residence and moved into his mother's home. The magistrate found the duration of the marriage was from June 7, 1980 to February 23, 2007. Based on the undisputed evidence, the magistrate found the parties are incompatible and granted Charles a divorce on such grounds.
 {¶ 14} At the time of trial, Charles asserted he was entitled to co-counsel fees in two cases. He is currently in possession of one co-counsel fee check in the amount of $33,333. The magistrate found his fee splitting averages $21,974 per year. On February 21, 2007, Charles' employer terminated his employment.
 {¶ 15} Pursuant to stipulation, the magistrate found the value of the marital residence is $220,000. The two mortgages have a combined balance of $203,500, and *Page 5 
the equity is $16,500. Terri resides in the marital residence, while Charles lives in his mother's house and is not required to pay rent or utilities.
 {¶ 16} Pursuant to agreement, the magistrate found that Terri would be the primary residential parent and legal custodian of the parties' two minor children. Terri sought $3,500 in spousal support for life.
 {¶ 17} While Terri stated her annual earned income is $8,500, the magistrate found the evidence did not support that conclusion. The magistrate found that Terri's annual income is $31,200, based on her testimony that she earns $15 per hour and works an average of 40 hours per week.
 {¶ 18} Based on Charles' wages ($136,302) and his average co-counsel fees ($21,974), the magistrate found his annual income for purposes of child support for 2006 was $158,276, and Terri's income was $38,400, comprised of $31,200 in self-employment income and $7,200 in rental income (based on the imputed rental value of $600 per month). Based on these amounts, the magistrate calculated Charles' child support obligation at $659.09 per month per child.
 {¶ 19} The magistrate found the monthly mortgage payments total $1,528.57. Terri desires to remain in the residence for four years until the parties' youngest son is emancipated. The magistrate found that she should be permitted to remain there during that time, and that she should make the mortgage payments and collect rent to be applied to the mortgages in this period. After the youngest son is emancipated, the residence should be sold and the proceeds divided equally up to $16,500, which is the current equity in the residence. The magistrate found that any equity received in excess of $16,500 should be Terri's property. *Page 6 
 {¶ 20} Charles has a 401(k) plan with Weltman Weinberg with a value of $72,104. The magistrate found the plan to be a marital asset and should be divided equally between the parties.
 {¶ 21} The magistrate found each party should be responsible to pay one-half of the parties' outstanding marital debt.
 {¶ 22} The magistrate did not determine the amount of Charles' income for spousal support purposes due to the termination of his job. To reflect his situation, the magistrate determined Charles should pay $1,000 per month in spousal support until the death of either party or Terri's remarriage. The magistrate concluded that the court should retain jurisdiction to modify spousal support.
 {¶ 23} On April 26, 2007, Terri filed objections to the magistrate's decision. However, she did not file a transcript of the magistrate trial in support of her objections. On June 21, 2007, the trial court held a hearing on appellant's objections. In the trial court's August 21, 2007 decision on the objections, the court noted that, because Terri had failed to file a transcript of proceedings before the magistrate, "pursuant to Civil Rule 53(E)(3)(C), the facts are as determined by the Magistrate in her Decision." Based on the magistrate's findings of fact, the trial court found Charles' income for spousal support purposes to be $136,302 and increased the award of spousal support to $2,800 per month. On September 26, 2007, the court's judgment entry of divorce was journalized.
 {¶ 24} Terri appeals the trial court's divorce decree and assigns three assignments of error. Charles also appeals the divorce decree, assigning one assignment of error. *Page 7 
 {¶ 25} For her first assignment of error, Terri asserts:
 {¶ 26} "THE TRIAL COURT ERRED IN ASSUMING FACTS NOT PRESENTED AND NOT FOUND BY THE MAGISTRATE IN ARRIVING AT ITS [SIC] FINAL JUDGMENT ENTRY."
 {¶ 27} As a preliminary matter, Civ. R. 53(D)(3)(b)(iii) provides in pertinent part: "An objection to a factual finding, whether or not specifically designated as a finding of fact * * * shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." This court has repeatedly held that if the objecting party fails to provide either of the above in support of his or her objections, they are "precluded from arguing factual determinations on appeal." Yancey v. Haehn (Mar. 3, 2000), 11th Dist. No. 99-G-2210, 2000 Ohio App. LEXIS 788, *7. The duty to provide a transcript or affidavit to the trial court rests with the person objecting to the magistrate's decision. In re O'Neal (Nov. 24, 2000), 11th Dist. No. 99-A-0022, 2000 Ohio App. LEXIS 5460, *7. It is well-settled that an appellant is prohibited from challenging the factual findings of the magistrate unless he files a transcript of the magistrate's hearing with the trial court with his objections. Savage v. Savage, 11th Dist. Nos. 2004-L-024 and 2004-L-040, 2004-Ohio-6341, at ¶ 31. If the objecting party fails to file the transcript or an affidavit of evidence, the trial court's review is limited to the legal conclusions in light of the facts found by the magistrate, unless the trial court holds further hearings.Weitzel v. Way, 9th Dist. No. 21539, 2003-Ohio-6822, at ¶ 18. "Where the failure to provide the relevant portions of the transcript or suitable alternative is clear on the face of the submissions, the trial court cannot then address the merits of the factual objection because the objecting party, whether through *Page 8 
inadvertence or bad faith, has not provided all of the materials needed for the review of that objection." (Emphasis sic.) Wade v. Wade (1996),113 Ohio App.3d 414, 418.
 {¶ 28} Under her first assignment of error, Terri challenges various factual findings of the magistrate, e.g., that she has skills in home health care, as a teacher's aide, and in billing that she could use to obtain employment in one of these areas. Terri also argues there were no factual findings concerning her income, so the magistrate erred in determining the amount of her income. Each of these arguments challenges factual findings of the magistrate. Because Terri failed to file a transcript of the magistrate hearing with the trial court, she waived each argument under her first assignment of error. In any event, even if these arguments were not waived, they would not be well taken because each of these factual findings is supported by other findings of fact in the magistrate's decision. Further, we do not agree with Terri's argument that the magistrate imputed income to her because there were no factual findings supporting the magistrate's calculation of her income. Based on Terri's testimony, the magistrate determined her hourly wage, her average hours worked per week, and thus her annual self-employment income.
 {¶ 29} Appellant's first assignment of error is not well taken.
 {¶ 30} Terri's second assignment of error and Charles' sole assigned error are interrelated and shall be considered together. For Terri's second assignment of error, she contends:
 {¶ 31} "THE TRIAL COURT ERRED AND COMMITTED AN ABUSE OF DISCRETION IN ORDERING $2,800 PER MONTH IN SPOUSAL SUPPORT AND $557.04 PER CHILD IN CHILD SUPPORT." *Page 9 
 {¶ 32} Charles asserts for his sole assigned error:
 {¶ 33} "THE TRIAL COURT ERRED WHEN IT MODIFIED THE MAGISTRATE'S DECISION IN THE ABSENCE OF A TRANSCRIPT."
 {¶ 34} A trial court has broad discretion to award spousal support.Mahon v. Mahon (Mar. 12, 1999), 11th Dist. No. 98-T-0050, 1999 Ohio App. LEXIS 938, *10. A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court has abused its discretion. Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67. An abuse of discretion is more than simply an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. However, the trial court's discretion is not unlimited. R.C. 3105.18 sets forth a list of factors that must be considered by a trial court when making an award of spousal support. Layne v. Layne (1992), 83 Ohio App.3d 559, 562-563. The trial court must evaluate the evidence in accordance with each factor and then weigh the need for spousal support against the ability to pay it. Id. The factors the trial court must consider in establishing an order of spousal support include the following:
 {¶ 35} "(a) The income of the parties, from all sources * * *;
 {¶ 36} "(b) The relative earning abilities of the parties;
 {¶ 37} "* * *
 {¶ 38} "(h) The relative extent of education of the parties;
 {¶ 39} "* * *
 {¶ 40} "(n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C). *Page 10 
 {¶ 41} To enable the reviewing court to determine if an award is fair, equitable, and in accordance with the law, the trial court must "indicate the basis for its award in sufficient detail" to permit proper appellate review. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus.
 {¶ 42} First, we note that Terri confines her argument to the court's award of spousal support and does not address the child support order. Since no argument is made concerning child support, pursuant to App. R. 16, our review is limited to the trial court's spousal support order. Terri and Charles both argue in their respective assignments of error that the trial court abused its discretion in awarding $2,800 in spousal support; however, each bases his or her argument on different grounds. The basis for Terri's argument is that the amount of spousal support is shockingly low so that it is patent the trial court abused its discretion. We note that at the magistrate trial, Terri prayed for at least $3,500. Contrary to her argument, that amount is not so far from $2,800 as to shock the conscience of this court.
 {¶ 43} Further, we note that the trial court considered each of the statutory factors for spousal support under R.C. 3105.18. Specifically, under factor (a), the trial court found it appropriate to use Charles' gross salary for 2006 of $136,302 as his income for the spousal support determination. We observe that, prior to 2004, Charles was earning $103,000 per year as an associate attorney with Weltman Weinberg. As noted, supra, the parties stipulated the amount of Charles' annual income from 2004 to 2006, inclusive. In commenting on the relative earning abilities of the parties under factor (b), the court noted that: (1) Charles has four advanced degrees, including two in law, while Terri is a high school graduate; (2) Charles has been continuously employed *Page 11 
as an attorney with various law firms since he obtained his license to practice law in 1990, while Terri has been a homemaker for 27 years, responsible for all household chores and the home-schooling of the parties' five children; (3) Charles has an established history of earning over $100,000 per year with his most recent employment contract paying him $150,000 per year, while Terri earns $15 per hour cleaning houses; and (4) Charles' 2006 gross salary, excluding his co-counsel fees, was almost four times that of Terri's.
 {¶ 44} As to factor (n), the trial court found Charles has no mortgage or rent payment, while Terri's monthly mortgage costs for remaining in the marital home with the parties' two unemancipated children is $1,528. The court further found that the rental income attributable to Terri is $3,600 per year based on the actual amount of rent she receives. The trial court considered the statutory factors in light of the magistrate's findings of fact, which were based in part on the exhibits and stipulations attached to the magistrate's decision, and we cannot say the court abused its discretion in awarding Terri $2,800 in spousal support.
 {¶ 45} In support of his position, Charles argues that by increasing the amount of spousal support to $2,800 per month, the trial court abused its discretion because appellant failed to file the transcript of the hearing before the magistrate. He also argues, without citing any case law authority in support, that the court abused its discretion in determining his income because his employment had been terminated. Charles is a licensed professional with an established income that spans multiple employers. The trial court did not impute income to him, but rather, estimated his income based on his earning history. A domestic relations court can estimate a *Page 12 
spouse's income based on his earnings in a prior similar business in establishing an award of spousal support. See, e.g., Cole v. Cole, 5th Dist. No. 2006-CA-00190, 2007-Ohio-54; Bach v. Bach (Sept. 10, 1999), 2d Dist. No. 17497, 1999 Ohio App. LEXIS 4191.
 {¶ 46} Because the trial court's findings and award were based on the factual findings of the magistrate, which included the history of Charles' earnings over the years prior to the termination of the marriage, we cannot say the trial court abused its discretion in estimating Charles' income and in awarding Terri $2,800 per month in spousal support.
 {¶ 47} Terri's second assignment of error and Charles' cross-assignment of error are not well taken.
 {¶ 48} Terri states for her third assignment of error:
 {¶ 49} "THE TRIAL COURT ERRED AND COMMITTED AN ABUSE OF DISCRETION IN FAILING TO DIVIDE ALL OF THE MARITAL ASSETS."
 {¶ 50} Terri argues the trial court abused its discretion by failing to divide two fee-splitting checks in Charles' possession totaling $55,000. From our review of the record, there was only one such check in the amount of $33,333. The magistrate indicated in her report that Charles "had just received" the check in 2007, but the magistrate did not state when in that year he received it. Nor did the magistrate find whether the fee was for services rendered during the marriage.
 {¶ 51} R.C. 3105.171(A)(3)(a)(1) defines marital property as "all real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage * * *." The trial court *Page 13 
found that "during the marriage" meant the date of the marriage until February 23, 2007. As a result, if the fees were obtained after February 23, 2003, the check would be Charles' separate property. Without any finding by the magistrate as to when this fee was earned and received, Terri has failed to preserve the issue on appeal.
 {¶ 52} Further, because Terri did not file the transcript of the magistrate's proceedings in the trial court, it is unclear whether the magistrate considered this check as income in her award of spousal support. By failing to file the transcript, Terri waived any challenge concerning the magistrate's disposition of this check.
 {¶ 53} Appellant's third assignment of error is not well taken.
 {¶ 54} For the reasons stated in the Opinion of this court, the assignments of error and cross-assignment of error are without merit, and it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.
 DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur. *Page 1